| | |
|---|---|
| RUBIE'S LLC and AMAR S. MATHFALLU,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN TITLE COMPANY,<br><br>Defendant. | No. 1:18-cv-01052-DAD-SKO<br><br>ORDER GRANTING IN PART CROSS-DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>(Doc. No. 8) |
| FIRST AMERICAN TITLE COMPANY,<br><br>Cross-claimant,<br><br>v.<br><br>WELLS FARGO BANK, N.A. and UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>Cross-defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

This matter is before the court on a motion to dismiss cross-claimant First American Title Company's ("First American") third-party complaint against cross-defendants Wells Fargo Bank, N.A. ("Wells Fargo") and the U.S. Small Business Administration ("SBA") based on the doctrine of derivative jurisdiction. (Doc. No. 8.) This case was removed by the United States on August

6, 2018 and the pending motion to dismiss was filed on August 13, 2018. (Doc. Nos. 1, 8.) First American opposed the motion on September 4, 2018. (Doc. No. 9.) The SBA replied on September 11, 2018. (Doc. No. 10.) No other party, including the original plaintiffs or cross-defendant Wells Fargo, has filed briefing in response to this motion. Additionally, it appears Wells Fargo was never served with the notice of removal. (*See* Doc. No. 1-2) (indicating the original plaintiffs and First American were served). At the hearing on this motion, only counsel for the SBA and First American entered an appearance, with Assistant United States Attorney Lynn Ernce appearing on behalf of the SBA and attorney Sean O'Neal on behalf of First American. For the reasons that follow, the motion to dismiss will be granted in part.

## BACKGROUND

This action primarily concerns a failed attempt to refinance a commercial loan on real property. The initial complaint in the case was filed on April 16, 2018 by Rubie's LLC and Amar S. Mathfallu (collectively, "plaintiffs") and alleges as follows. (Doc. No. 1 at 4.) Plaintiff Mathfallu purchased property at 222 Sutter Street, Stockton, California in February 2014, retaining First American to serve as the escrow and title company for the transaction. (*Id.* at 5.) Mathfallu obtained a loan from a company called Socotra Capital (the "Socotra Loan") to fund the purchase. (*Id.*) The terms of the Socotra Loan were that the interest would be prepaid for the first two years, and the loan would mature after three years. (*Id.*)

In August 2014, Mathfallu transferred the property to Rubie's LLC, of which he is a 100 percent owner. (*Id.*) Plaintiffs attempted to refinance the Socotra Loan at the end of 2016, and in doing so, opened escrow with Chicago Title Company. (*Id.*) In that process, plaintiffs discovered a lien for $146,000 in favor of San Joaquin County Certified Development Corporation ("SJCCDC"). (*Id.*) Despite having located new financing to pay off the Socotra Loan, the new lender refused to complete the financing transaction due to the SJCCDC lien. (*Id.*) Plaintiffs contacted Socotra about this issue, which, on plaintiffs' behalf, made a demand on First American to clear the lien. (*Id.* at 6.) First American failed to clear the lien. (*Id.*) Shortly thereafter, in March 2017, plaintiffs paid a loan extension fee to extend the maturity date on the Socotra Loan

/////

by ninety days to allow time for First American to clear the title to the property. (*Id.*) However, First American failed to clear the lien within the ninety-day period. (*Id.*)

On June 12, 2017, Socotra filed a notice of default and instituted foreclosure proceedings. (*Id.*) Plaintiffs were unable to pay off the Socotra Loan, and were also assessed $22,357.22 in late fees and $56,226.70 in interest. (*Id.*) Additionally, the tenant on the property refused to pay rent of $50,400, due to the foreclosure. (*Id.*) Plaintiffs also paid a foreclosure postponement fee of $4,000 and in excess of $10,000 in fees to Socotra. (*Id.*) Plaintiffs incurred more than $10,000 in their own attorneys' fees during this process. (*Id.*) Finally, plaintiffs lost the opportunity to refinance the Socotra Loan at a six percent interest rate, and ultimately were forced to refinance it at a 12 percent interest rate. (*Id.*) Plaintiffs thereafter filed suit against First American in Stanislaus County Superior Court, alleging causes of action for breach of contract, breach of fiduciary duty, and negligence. (*Id.* at 6–8.)

First American filed a cross-complaint on May 23, 2018 in the same state court action, naming as cross-defendants Wells Fargo and the SBA. (*Id.* at 10.) First American claims that, on February 20, 2014, it paid Wells Fargo, acting as the servicing agent for the SBA, $108,736.75 in full satisfaction of the loan secured by a deed of trust in favor of SJCCDC. (*Id.* at 12.) That deed of trust was later recorded, on January 25, 2016, the same date it was assigned to the SBA. (*Id.*) First American claims that Wells Fargo and the SBA failed to timely reconvey the deed of trust following First American's satisfaction of the loan that the deed of trust secured. (*Id.*) First American's cross-complaint alleges causes of action for implied indemnity, equitable indemnity, and contribution against Wells Fargo and the SBA. (*Id.* at 12–15.) On August 6, 2018, defendant SBA removed the matter to this federal court under 28 U.S.C. § 1442(a)(1), and shortly thereafter, filed the pending motion to dismiss. (Doc. Nos. 1, 8.)

## LEGAL STANDARD

A party may move to dismiss a case for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because of this, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

asserting jurisdiction." *Id.* (internal citations omitted). However, removal jurisdiction under § 1442 is to be construed "broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

Challenges to jurisdiction may be either facial or factual in nature. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012). A facial attack to jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Meanwhile, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

**ANALYSIS**

Exactly what is in dispute in this motion has shifted somewhat over the course of the briefing.[1] The government moved to dismiss this case under the derivative jurisdiction doctrine, analogizing this case to one previously heard by the undersigned, *DeJohn v. U.S. Department of Agriculture*, No. 1:17-cv-01289-DAD-JLT, 2017 WL 5900047 (E.D. Cal. Nov. 20, 2017). (*See* Doc. No. 8-1 at 4–5.) First American opposed the motion, noting that unlike the situation in *DeJohn*, here the Stanislaus County Superior Court had jurisdiction over the complaint due to the "sue and be sued" clause of the Small Business Act, the authorizing statute for the SBA. (Doc. No. 9 at 8–12.) Additionally, First American asserts that the state court had jurisdiction over First American's claims pursuant to 28 U.S.C. § 2410. (*Id.* at 12–13.) In reply, the government acknowledged that it was unfamiliar with the Small Business Act and with the "sue and be sued" clause at the time it filed its motion to dismiss. (Doc. No. 10 at 3.) The government concedes

---

[1] The court's meet and confer requirement prior to the filing of a motion is intended to avoid this. (*See* Doc. No. 2-1 at 2) ("counsel shall engage in a pre-filing meet and confer to discuss thoroughly the substance of the contemplated motion and any potential resolution"). In the reply filed in support of the pending motion to dismiss, counsel for the government explains in detail additional meet and confer efforts that were undertaken prior to the filing of First American's opposition to the motion. (Doc. No. 10 at 2–3.) The court assigns no blame, but it is apparent that counsel did not thoroughly discuss the motion prior to its filing. Had they done so, the motion would have been streamlined, or the need for it potentially eliminated altogether.

4

that the "sue or be sued" clause expressly waives sovereign immunity and permits state courts to exercise jurisdiction over contract claims against the SBA. (*Id.*) However, the government now argues that all of First American's claims against the SBA are tort claims, not contract claims, and the "sue or be sued" clause of the Small Business Act does not waive sovereign immunity over tort claims against the SBA. (*Id.* at 3–7.) Additionally, the government maintains 28 U.S.C. § 2410 does not provide an independent jurisdictional basis for the state court. (*Id.* at 7.)

The doctrine of derivative jurisdiction provides that "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none [upon removal], although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981); *Minnesota v. United States*, 305 U.S. 382, 389 (1939). Where, for instance, a suit is removed to federal court because it involves a federal officer, the federal court exercises "a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties." *Manypenny*, 451 U.S. at 242 n.17; *see also In re Elko Cty. Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 n.3 (9th Cir. 1988). The most common application of this doctrine appears to occur, ironically, where the federal court has exclusive jurisdiction. *See* Barry A. Lindahl, 1 Modern Tort Law: Liability and Litigation § 14:16 (2d ed. 2017) ("[A]n action otherwise within the original and exclusive jurisdiction of the federal district court cannot be removed thereto because the state court could not have had subject-matter jurisdiction over such an action.").

Congress abolished the doctrine of derivative jurisdiction for all removal of actions under 28 U.S.C. § 1441 in 1986. *See* 28 U.S.C. § 1441(f); *Ethridge*, 861 F.2d at 1392 n.3. Courts have noted that "[t]he language is crystal clear," and the doctrine has been expressly abolished for removals under § 1441. *Bermudez v. U.S. Dep't of Housing and Urban Dev.*, 84 F. Supp. 2d 1094, 1095 (C.D. Cal. 2000). Moreover, various courts have noted strong reasons in favor of the complete abolition of the derivative jurisdiction doctrine—primarily that it makes little sense to dismiss a case for lack of jurisdiction because it was removed to the federal court that has exclusive jurisdiction. *North Dakota v. Fredericks*, 940 F.2d 333, 336 (8th Cir. 1991) ("The only

effect . . . was to multiply proceedings. This kind of rigmarole is unworthy of a civilized judicial system."); *Lou v. Belzberg*, 834 F.2d 730, 735 n.2 (9th Cir. 1987) ("One would have thought that the purpose of removal in such a case is to get the case out of the court that lacks jurisdiction to hear it and into the court that has jurisdiction.") (quoting *Washington v. Am. League of Prof'l Baseball Clubs*, 460 F.2d 654 658–59 (9th Cir. 1972)); *see also Fredericks*, 940 F.2d at 337–38 ("The derivative-jurisdiction doctrine owes its origin to nothing whatever in the removal statutes themselves, but rather to the formalistic conception, entirely divorced from reality, that a case originally filed in a court without jurisdiction is doomed to be a nullity forever, even after transfer to a completely different forum.").

However, for reasons not apparent to the undersigned,[2] the doctrine of derivative jurisdiction was not abolished for removals under 28 U.S.C. § 1442. Indeed, it appears the doctrine of derivative jurisdiction remains the law of this Circuit for removals under § 1442, any prior criticisms of the doctrine notwithstanding. *See Cox v. U.S. Dep't of Agric.*, 800 F.3d 1031, 1032 (9th Cir. 2015) (reversing and remanding case under the derivative jurisdiction doctrine because district court should have dismissed the case rather than remanding it to state court); *Glass v. Nat'l R.R. Passenger Corp.*, 570 F. Supp. 2d 1180, 1182–83 (C.D. Cal. 2008) ("[T]he derivative jurisdiction doctrine is alive and well and applies to 28 U.S.C. § 1442 removals."); *FBI v. Superior Court of Cal.*, 507 F. Supp. 2d 1082, 1090–91 (N.D. Cal. 2007); *see also Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 245–46 (4th Cir. 2007). *But see Rodas v. Seidlin*, 656 F.3d 610, 619–25 (7th Cir. 2011) (concluding that, while the derivative jurisdiction doctrine continues to exist under § 1442, it is a procedural rather than jurisdictional defect that does not prohibit removal); *Fredericks*, 940 F.2d at 337–38 ("Accordingly, we hold that the doctrine of derivative jurisdiction, as applied to defeat removals, should be abandoned completely."); *Nye*, 2010 WL 931926, at *4–5 (concluding that, notwithstanding the language of § 1441(f), the

---

[2] Nor, it seems, to other courts and scholars. *See Nye v. Hilo Med. Ctr.*, No. 09–00220 JMS/KSC, 2010 WL 931926, at *4 (D. Haw. Mar. 11, 2010) (noting that Congress originally abolished derivative jurisdiction entirely in 1985, but partially revived it in 2002 by restricting the scope of that abolition, which "for no apparent policy reason," means 28 U.S.C. § 1441(f) was limited solely to cases under 28 U.S.C. § 1441) (quoting 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 3721).

derivative jurisdiction doctrine does not mandate dismissal because doing so would render other provisions of the Federal Tort Claims Act "nonsensical").

As noted, this doctrine of derivative jurisdiction is premised on the legal fiction that a case filed in state court over which that court lacks jurisdiction is void from its very beginning, and a federal court therefore has no jurisdiction to acquire over the case via removal. *See Fredericks*, 940 F.2d at 337–38; *Bradshaw v. Gen. Motors Corp.*, 805 F.2d 110, 112–13 (3d Cir. 1986) (noting that a claim filed in state court was a "nullity," and therefore the derivative jurisdiction doctrine would make a suit alleging only that claim subject to dismissal on removal), *abrogated on other grounds by Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990); *FBI*, 507 F. Supp. 2d at 1090 (explaining that, under the derivative jurisdiction doctrine, "if the state court lacks jurisdiction over a given matter, the case is a 'nullity when filed and a fortiori, the district court acquired no subject matter jurisdiction over those claims upon removal'") (quoting *Bermudez v. HUD*, 84 F. Supp. 2d 1094, 1095 (C.D. Cal. 2000)).

The language of 15 U.S.C. § 634 permits the SBA to "sue and be sued in any court of record of a State having general jurisdiction," and both parties agree that this language confers state-court jurisdiction over suits brought against the SBA, at least in some instances. The parties also agree that this grant of jurisdiction on state courts is cabined by the Federal Tort Claims Act, which provides that federal courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b)(1). In other words, claims against the government or its officers must be brought exclusively in federal court to the extent those claims sound in tort. *See Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) ("The Federal Tort Claims Act . . . waives the sovereign immunity of the United States for actions in tort."). The remaining question in this case is, therefore, whether First American's claims against the SBA—for implied indemnity, partial or full equitable indemnity, and contribution—are tort claims. If so, the state court lacked jurisdiction to hear them.

/////

Unsurprisingly, the government seeks to characterize all three of these claims as tort claims and argues that this court lacks derivative jurisdiction. (*See* Doc. No. 10 at 3–5.) The government is correct that under California law, these claims can be tort claims. *See Preferred Risk Mut. Ins. Co. v. Reiswig*, 21 Cal. 4th 208, 215 (1999) ("[E]quitable indemnity actions are simple common law tort actions filed to regain monies lost by another's negligence."); *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal. App. 4th 1372, 1378 (1992) ("Contribution . . . is a creature of statute and distributes the loss equally among all tortfeasors"). However, authority appears to be lacking for any suggestion that these claims are *necessarily* tort claims. Indeed, multiple courts have recognized indemnity claims not based on tort. *See Considine Co. v. Shadle, Hunt & Hagar*, 187 Cal. App. 3d 760, 769–70 (1986) ("A defendant sued for breach of contract may have a right of implied indemnity against a third person whose wrong caused the defendant's breach [, which] . . . is distinct from the equitable indemnity among tortfeasors."); *Great W. Furniture Co., Inc. of Oakland v. PorterCorp.*, 238 Cal. App. 2d 502, 516–17 (1965) ("[W]here the right of implied indemnity arises from a contractual relationship between the indemnitor and the indemnitee, it is predicated upon the indemnitor's breach of such contract."); *Cahill Bros., Inc. v. Clementina Co.*, 208 Cal. App. 2d 367, 376 (1962) ("[A] right of implied indemnification may arise as a result of contract or equitable considerations."). In any event, whether an action is based on contract or tort does not turn on distinctions such as the form of the pleading or the relief demanded; instead, the analysis depends "upon the nature of the right sued upon." *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1602 (2008); *see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343 n.2 (9th Cir. 1996) ("The label that a plaintiff places on his pleadings . . . does not determine the nature of his cause of action."). If the action is based on breach of a promise, it is contractual, whereas if it is based on breach of a noncontractual duty it is tortious. *Amtower*, 158 Cal. App. 4th at 1602. If the matter is uncertain, courts assume that the action is based on contract. *Id.*

Here, although the factual allegations set forth in the cross-complaint are rather brief, First American's cause of action for implied indemnity is expressly based in contract. (*See* Doc. No. 1 at 12) (alleging that the SBA "impliedly covenanted and *contracted* to defend, indemnify and

8

hold harmless" First American) (emphasis added). The factual allegations assert that First American paid cross-defendants $108,736.75 in full satisfaction of a loan secured by a deed of trust in favor of Tracy/San Joaquin County Certified Development Corporation. (*Id.*) Despite this payment, First American alleges that cross-defendants failed to reconvey that deed of trust despite their obligation to do so. (*Id.*) Because this claim sounds in contract rather than tort, the court finds that it has jurisdiction as to this cause of action.

In its supplemental briefing, SBA concedes that this cause of action is a contract-based claim, but argues that the court should nonetheless dismiss it because the allegations fail to state a claim for relief. (Doc. No. 17 at 2–4.) However, SBA's motion sought dismissal under Rule 12(b)(1) for lack of jurisdiction, and did not argue that the allegations failed to state a claim for relief under Rule 12(b)(6). (*See* Doc. No. 8-1.) Just as arguments raised for the first time in a reply brief are generally considered waived, *see United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008), so too are arguments raised for the first time in a sur-sur-reply brief. SBA's motion to dismiss will therefore be denied as to First American's implied indemnity claim.

With respect to First American's second and third causes of action—for equitable indemnity and contribution, respectively—First American concedes in its sur-reply that these claims sound in equity rather than contract. (Doc. No. 15 at 2 n.1.) Nonetheless, First American argues that the state court possessed subject-matter jurisdiction over those claims under an alternative statute and that, therefore, this court also possesses jurisdiction. That alternative provision now relied upon by First American states that the United States may be named as a party in a civil action in either state or federal court: (1) to quiet title to, (2) to foreclose a mortgage or other lien upon, (3) to partition, (4) to condemn, or (5) of interpleader or in the nature of interpleader with respect to real or personal property on which the United States has or claims a mortgage or lien. 28 U.S.C. § 2410(a)(1)–(5).

Under appropriate circumstances, § 2410 constitutes a waiver of sovereign immunity. *Arford v. United States*, 934 F.2d 229, 234 (9th Cir. 1991). However, the Ninth Circuit has "strictly limited the reach and application" of § 2410(a). *Hughes v. United States*, 953 F.2d 531, 538 (9th Cir. 1992). Thus, § 2410 does not waive sovereign immunity "where the United States

claims a title interest as distinguished from a lien interest." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1092 (9th Cir. 2007) (quoting *Bertie's Apple Valley Farms v. United States*, 476 F.2d 291, 292 (9th Cir.1973)); *see also Hughes*, 953 F.2d at 538 ("[W]hile a taxpayer may contest the procedural validity of a tax lien under § 2410, he may do so only if, at the time the action is commenced, the government still claims a lien or a mortgage on the property.").

The court finds that § 2410 does not waive sovereign immunity as to the second and third causes of action of First American's cross-complaint. The plain language of the statute waives sovereign immunity only as to five causes of action: an action to quiet title, an action to foreclose a mortgage or lien, an action for partition, an action for condemnation, and an action of interpleader. 28 U.S.C. § 2410. First American's claims for equitable indemnity and contribution fall into none of these categories.³ Those claims must therefore be dismissed.

Finally, the court addresses First American's request in its sur-reply that leave to amend be granted. (Doc. No. 15 at 6–7.) Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citations omitted). Because the court does not find that granting leave to amend in this case would cause "undue prejudice to the opposing party," the court will grant First American's request for leave to amend its cross-complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, First American will be granted thirty days from the service of this order in which to file an amended cross-complaint should it elect to do so.

/////

---

³ First American relies on language in *City of Joliet v. New West, L.P.*, 562 F.3d 830, 833 (7th Cir. 2009), to argue that the mere presence of the United States in this action, combined with its interest in the property, suffices to confer jurisdiction under § 2410. (Doc. No. 9 at 12–13.) This argument is unavailing because, as the decision in *City of Joliet* made clear, the plaintiff in that case sought to condemn the property at issue. *See City of Joliet*, 562 F.3d at 832 ("In the district court the Department of Housing and Urban Development intervened and contended that § 221 of the National Housing Act of 1954 . . . and the Multifamily Assisted Housing Reform and Affordability Act of 1997 . . . block condemnation."). Condemnation proceedings are expressly included in the waiver of sovereign immunity under § 2410(a)(4), whereas First American's second and third causes of action in its cross-complaint are not.

**CONCLUSION**

For these reasons,

1. Cross-defendant U.S. Small Business Administration's motion to dismiss (Doc. No. 8) is granted in part;
2. First American's second and third causes of action are dismissed; and
3. Within thirty days from the date of service of this order, First American is directed to either file an amended cross-complaint or a notice with the court stating that it intends to proceed on the claim already found cognizable.

IT IS SO ORDERED.

Dated: **December 5, 2018**

UNITED STATES DISTRICT JUDGE