UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBIE'S, LLC and AMAR S. MATHFALLU, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST AMERICAN TITLE COMPANY, <br><br> Defendant | No. 1:18-cv-01052-DAD-SKO <br><br><br> ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS <br><br> (Doc. Nos. 44, 45) |
| FIRST AMERICAN TITLE COMPANY, <br><br> Cross Claimant, <br><br> v. <br><br> WELLS FARGO BANK, N.A. and U.S. SMALL BUSINESS ADMINISTRATION, <br><br> Cross Defendants. | |

This matter came before the court on October 16, 2019, for a hearing on third-party defendants Wells Fargo Bank, N.A. ("Wells Fargo") and the U.S. Small Business Administration's ("SBA") motions to dismiss third-party plaintiff First American Title Company's ("First American") second amended complaint ("SAC"). (Doc. Nos. 44, 45.) Attorney Dana Andreoli appeared on behalf of First American, attorney John Campbell appeared

1

on behalf of Wells Fargo, and Assistant United States Attorney Lynn Trinka Ernce appeared on behalf of the SBA. Having reviewed the parties' briefing and heard oral argument, and for the reasons explained below, the court will grant the third-party defendants' motions (Doc. Nos. 44, 45) and dismiss First American's SAC (Doc. No. 43) without further leave to amend.

**BACKGROUND**

Plaintiffs Rubie's LLC and Amar S. Mathfallu (collectively, "plaintiffs") commenced this action in the Stanislaus County Superior Court against First American on April 16, 2018, seeking damages for First American's alleged negligence. (Doc. No. 43 ("SAC") at ¶ 5.) First American filed a third-party complaint on May 23, 2018 in the same action, naming Wells Fargo and SBA as third-party defendants. (Doc. No. 1 at 10.) In its SAC now before this court, First American alleges as follows. In or about January 2006, David D. Moscovic and Linda S. Moscovic obtained a loan made by the SBA through the Tracy/San Joaquin County Certified Development Corporation[1] ("SJCCDC") in the principal sum of $146,000 ("SBA Loan"). (SAC at ¶ 6.) The SBA Loan was secured by a deed of trust recorded on January 25, 2006 as Document No. 2006-0017939 in the Official Record of Stanislaus County ("SBA Deed of Trust") against the real property commonly known as 222 N. Sutter Street, Stockton, California (the "Property"). (*Id.*) The SBA Deed of Trust was assigned to the SBA pursuant to a written assignment also recorded on January 25, 2006 as Document No. 2006-017940 in the Official Record of Stanislaus County (the "Assignment"). (*Id.*) First American alleges that Wells Fargo was the authorized servicing agent for the SBA Loan and at all times was acting within the course and scope of its authority for and on behalf of the SBA, which approved and ratified Wells Fargo's conduct. (*Id.*)

In or about February 2014, the Moscovics sold the Property to plaintiff Mathfallu, who in August of 2014 transferred the Property to plaintiff Rubie's, LLC, of which Mathfallu is the sole owner. (*Id.* at ¶ 7.) In conjunction with that sale, beginning in or about September 2013 to February 2014, First American, acting as the escrow holder for the transaction, made written

---

[1] SJCCDC is a Certified Development Company ("CDC"), which provides the final portion of a SBA 504 loan's long-term fixed-asset financing for small businesses "made from the proceeds of a Debenture issued by the CDC, guaranteed 100 percent by SBA (with the full faith and credit of the United States), and sold to investors." 13 C.F.R. § 120.2.

2

requests to Wells Fargo, as the servicer of the SBA Loan and agent for the SBA, for a demand to pay off the SBA Loan secured by the SBA Deed of Trust.  (*Id.* at ¶ 8.)  All written requests stated that First American would "rely upon [Wells Fargo's] written demand/letter/statement to establish the amount necessary to pay the obligation in full, and as [Wells Fargo's] commitment to deliver a full reconveyance/release and/or satisfaction." (*Id.*)

On or about September 11, 2013, in response to First American's request for a payoff demand, Wells Fargo submitted a payoff demand to First American indicating $114,060.85 as the amount due to pay off the SBA Loan.  (*Id.* at ¶ 9.)  On or about February 12, 2014, in response to First American's additional request for a payoff demand, Wells Fargo submitted an updated payoff demand to First American indicating that $108,736.75 was the amount necessary to pay off the SBA Loan.  (*Id.*)  First American alleges that by submitting the payoff demand in response to its request for a payoff demand, third-party defendants agreed to release and reconvey the SBA Deed of Trust as a lien against the Property upon payment of the demand.  (*Id.*)  On or about February 20, 2014, First American paid third-party defendants $108,736.75.  (*Id.* at ¶ 10.)  Thereafter, however, third-party defendants failed to cause the SBA Deed of Trust to be reconveyed.  (*Id.* at ¶ 11.)[2]

After the court granted in part the SBA's motion to dismiss First American's original third-party complaint (Doc. No. 18), First American filed a third-party first amended complaint ("FAC") on January 4, 2019 (Doc. No. 20).  The court then granted both the SBA and Wells Fargo's motions to dismiss the FAC with leave to amend on June 20, 2019.  (Doc. No. 42.)  On July 10, 2019, First American filed the operative SAC alleging two causes of action:  (1) implied contractual indemnity against all third-party defendants, and (2) equitable indemnity against Wells Fargo.  (Doc. No. 43.)  On July 24, 2019, Wells Fargo and the SBA each filed a motion to dismiss the SAC, with SBA filing a motion for summary judgment in the alternative.  (Doc. Nos.

/////

---

[2]  The alleged impact that the failure of a recorded reconveyance later had upon plaintiffs Rubie's LLC and Amar S. Mathfallu and the damages incurred as a result by them has been summarized in the court's prior order and will not be repeated here.  (*See* Doc. No. 42 at 2–3.)

3

1    44, 45.)  First American filed oppositions to the motions to dismiss on September 3, 2019.  (Doc.

2    Nos. 49, 50.)  Wells Fargo and the SBA replied on October 9, 2019.  (Doc. Nos. 53, 54.)

## LEGAL STANDARDS

4    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

5    sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal

6    "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

7    under a cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th

8    Cir. 2019) (citation omitted).  A plaintiff is required to allege "enough facts to state a claim to

9    relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

10   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

11   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

12   *Iqbal*, 556 U.S. 662, 678 (2009).

13   In resolving a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true

14   and construed in the light most favorable to the nonmoving party."  *Naruto v. Slater*, 888 F.3d

15   418, 421 (9th Cir. 2018) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

16   2001)).  However, the court need not accept as true allegations that are "merely conclusory,

17   unwarranted deductions of fact, or unreasonable inferences."  *Sprewell*, 266 F.3d at 988 (citations

18   omitted).  Neither must the court "assume the truth of legal conclusions cast in the form of factual

19   allegations."  *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008) (citation

20   omitted).

21   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

22   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

23   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676

25   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

27   facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

28

not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court may consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

### A.     Request for Judicial Notice

Before addressing the merits of the pending motions, the court first analyzes the requests for judicial notice made by Wells Fargo in support of its motion to dismiss (Doc. No. 46), and by First American in support of its oppositions to both motions to dismiss (Doc. Nos. 49-1, 50-4). Wells Fargo asks the court to take judicial notice of a document consisting of relevant excerpts of the SBA's "Standard Operating Procedure (SOP) section 50 55 / 504 Loan Servicing and Liquidation," effective October 1, 2013. (Doc. No. 46 at 2.) First American asks the court to take judicial notice of five documents: (1) the SBA Deed of Trust; (2) the assignment of the SBA Deed of Trust to the SBA, dated January 23, 2006 and recorded in the Official Records of San Joaquin County on January 25, 2006 as Instrument Number 2006-017940; (3) plaintiffs' complaint filed in the Stanislaus County Superior Court on April 16, 2018; (4) First American's cross-complaint filed in Stanislaus County Superior Court on May 23, 2018, which was removed to this federal court on August 6, 2018; and (5) First American's SAC filed in this action on July 20, 2019. (Doc. Nos. 49-1 at 2; 50-4 at 2.)

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee*, 250 F.3d at 688 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). Doing so converts a motion to dismiss for failure to state a claim under Rule 12(b)(6) into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, courts recognize two exceptions to this rule: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*,

899 F.3d 988, 998 (9th Cir. 2018).  The Ninth Circuit has explained the incorporation-by-reference doctrine as follows:

> [I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself.  The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.

*Id.* at 1002.  Even if not directly attached to a complaint, a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  However, a complaint's "mere mention of the existence of a document is insufficient to incorporate the contents of a document."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint.  Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").

Meanwhile, Federal Rule of Evidence 201 permits courts to take judicial notice of an adjudicative fact if that fact "is not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.  For this reason, courts should not take judicial notice of a fact contained within a document if that fact "is subject to varying interpretations, and there is reasonable dispute as to what [the document] establishes."  *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

Here, the court will take judicial notice of the SBA's Standard Operating Procedure because it is information made publicly available by a government entity.  Additionally, the court takes judicial notice of the first and second documents as requested by First American because they are incorporated by reference into the operative SAC.  This action involves a determination

of the rights and obligations of the parties vis-à-vis the SBA Deed of Trust and its assignment to the SBA. The basis of First American's claim is that by operation of its request for documents, the SBA and Wells Fargo are now required to indemnify First American in the event that it is found to be liable to plaintiffs. *See Ritchie*, 342 F.3d at 908. Courts have taken judicial notice of deeds of trusts and subsequent assignments thereof. *See Sunbelt Rentals v. Hawks Truck Stop*, No. 2:10-cv-00690-MCE-GGH, 2010 WL 1729165, at *1 (E.D. Cal. Apr. 27, 2010). To counter First American's argument, the SBA relies on the document for which it seeks judicial notice to set forth the framework for the SBA loan servicing responsibility and authority. Courts have taken judicial notice of the SBA loan requirements to establish whether a claim falls within the SBA's authority, and this court will do the same. *See SBA v. Bensal*, 853 F.3d 992, 1003 & n.3 (9th Cir. 2017) (judicial notice taken of the SBA loan requirements). The court also takes judicial notice of the third, fourth, and fifth documents as requested by First American because they are all documents that have been filed in this litigation.[3] *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986) ("It is well established that a court may take judicial notice of its own records.").

Lastly, pursuant to Federal Rule of Evidence 201(c)(1), the court will *sua sponte* take judicial notice of First American's written requests for the issuance of a payoff demand, and the payoff demands issued by Wells Fargo in response. (Doc. No. 50-2, Exs. 1–5.) The parties did not request that judicial notice be taken of these documents, and First American did not attach them to its SAC. Rather, the documents are included as exhibits to First American's declaration of Gary McMillan, Senior Claims Counsel for First American, who is principally responsible for handling and responding to the claims asserted by plaintiffs against First American. (Doc. No. 50-2 at ¶¶ 1, 2.) The court will take judicial notice of each of these documents because (1) they are referred to in the SAC, (2) they are central to First American's claim that a contract existed between it and Wells Fargo, and (3) neither party has questioned the authenticity of the copy

---

[3] As the court advised the parties in its previous order (Doc. No. 42 at 7), however, they "need not seek judicial notice of documents filed in the same case." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (citing *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 (N.D. Cal. 2014)).

attached to the declaration. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (in ruling on a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

**B.      Whether the SAC States a Claim for Relief**

Both the SBA and Wells Fargo move to dismiss based upon the same arguments that they advanced in moving to dismiss First American's FAC: (1) First American inadequately alleges an implied contractual indemnity claim because it fails to allege the existence of a contract between First American and either the SBA or Wells Fargo; and (2) First American has inadequately alleged that Wells Fargo is jointly and severally liable to the underlying plaintiffs. (Doc. Nos. 44-1 at 1; 45 at 3.) The court considers each of these arguments in turn below.

           1.      <u>Implied Contractual Indemnity Claim</u>

First American has brought an implied contractual indemnity claim against both third-party defendants. (SAC at ¶¶ 12–15.) Wells Fargo and the SBA both argue that First American's implied contractual indemnity claim fails because neither third-party defendant has a contract with First American. (Doc. Nos. 44-1 at 6–7; 45 at 6–8.)

The existence of a contract between the parties is a prerequisite to stating an implied contractual indemnity claim. *See Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 968 (2007) ("Implied contractual indemnity is a type of equitable indemnity predicated on the indemnitor's breach of contract with the indemnitee.") (internal citation omitted), *as modified on denial of reh'g* (Apr. 17, 2007); *Jocer Enters., Inc. v. Price*, 183 Cal. App. 4th 559, 573 (2010) (citing *Prince*, 45 Cal. 4th at 1159) ("[I]mplied contractual indemnity presupposes a contractual relationship that supports a right to indemnification not rooted in an express contract term."); *Bear Creek Planning Comm. v. Title Ins. & Tr. Co.*, 164 Cal. App. 3d 1227, 1239, (1985) (stating that an action for implied contractual indemnity is "grounded upon the indemnitor's breach of duty owing to the indemnitee to properly perform its contractual duties"), *disapproved of on other grounds by Bay Dev., Ltd. v. Superior Court*, 50 Cal. 3d 1012 (1990). Relying on this rule, the SBA and Wells Fargo argue that any implied contractual

8

indemnity claim against them fails because First American's requests for payoff demands to Wells Fargo, and Wells Fargo's providing the payoff demands in response thereto, does not constitute a contract between those parties. (Doc. Nos. 44-1 at 6; 45 at 7.) The court must therefore analyze whether the SAC adequately alleges the existence of a contract.

As stated in the court's order dismissing the FAC, the undersigned adopts the majority approach among district courts in California with respect to the allegations required to adequately allege the existence of a contract. (*See* Doc. No. 42 at 10–11.) The question of whether a complaint adequately alleges the existence of a contract is governed by the pleading standards set forth in the Federal Rules of Civil Procedure and the cases interpreting those rules. *See, e.g.*, *Nikoopour v. Ocwen Loan Servicing, LLC*, No. 17-cv-2015-MMA (WVG), 2018 WL 1035210, at *4 (S.D. Cal. Feb. 23, 2018); *Iglesia Cristiana Luz Y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621-RMW, 2016 WL 692839, at *3 (N.D. Cal. Feb. 19, 2016); *Griffin v. Green Tree Servicing, LLC*, No. cv-14-9408-MWF (VBKx), 2016 WL 6782763, at *5 (C.D. Cal. Feb. 5, 2016); *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1102 n.7 (E.D. Cal. 2010).

"Rule 8 of the Federal Rules of Civil Procedure provides that, in alleging the existence of a contract, a plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect." *Dias v. JP Morgan Chase, N.A.*, No. 5:13-cv-05327-EJD, 2014 WL 2890255, at *3 (N.D. Cal. Mar. 19, 2015); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-01390-LHK, 2011 WL 311376, at *10 (N.D. Cal. Jan. 28, 2011) (stating that plaintiff must allege sufficient facts "to allow the Court to draw a reasonable inference that [there was a] definite promise, supported by consideration, that would establish a binding and enforceable contract"). Federal procedural rules do not require a plaintiff to attach the contract or recite its terms verbatim in order to allege the contract's existence. *Wynes v. Kaiser Permanente Hospitals*, No. 2:10-cv-0702- MCE-GGH, 2011 WL 1302916, at *11 (E.D. Cal. Mar. 31, 2011) ("While a claim for breach of contract need not allege specific terms of the contract, allegations of an existence of a written contract, performance under the contract, breach of contract, causation, and damages is sufficient to meet the federal notice pleading standards."). However, allegations representing "mere legal conclusions that a contract existed . . . will be insufficient to survive a motion to

dismiss." *Iglesia Cristiana Luz y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621-RMW, 2016 WL 692839, at *4 (N.D. Cal. Feb. 19, 2016).

Here, Wells Fargo argues that there was no contract between it and First American because there was no mutual consent. (Doc. No. 45 at 7–8.) Mutual consent is "[a]n essential element of any contract." *Nolan v. Am. Int'l Grp., Inc.*, No. 14-cv-00647-JGB-DTBx, 2014 WL 12558250, at *4 (C.D. Cal. Nov. 13, 2014) (citing *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004)). "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580.

The court is not persuaded that First American has adequately alleged mutual consent here. The gravamen of First American's argument is that "Wells accepted First American's offer which unconditional acceptance was communicated by responding to First American's offer with a payoff demand." (Doc. No. 49 at 7.) First American alleges that it made written requests to Wells Fargo "as the servicer for the SBA Loan and as the agent for Third-Party Defendant SBA, for a demand to payoff the SBA Loan secured by the SBA Deed of Trust." (SAC at ¶ 8.) Each of First American's written requests stated that First American would "rely upon [Wells Fargo's] written demand/letter/statement to establish the amount necessary to pay the obligation in full, and as [Well Fargo's] ***commitment to deliver a full reconveyance/release and/or satisfaction***." (*Id.*) While the SAC alleges that Wells Fargo submitted the payoff demand *to* First American *in response to* First American's written request for the same, Wells Fargo's payoff demand does not corroborate this allegation. As Wells Fargo notes, First American's request for the issuance of a payoff demand and Wells Fargo's actual payoff demand do not match up: Well Fargo's payoff demands are neither directed to any person or company identified in First American's request for payoff demand, nor were they delivered to the fax number or email listed on First American's requests. (Doc. No. 53 at 3; *compare* Doc. No. 50-2, Exs. 1, 2, 4, *with* Exs. 3, 5.) Rather, Wells Fargo sent its payoff demands letters to SJCCDC pursuant to the SBA's regulations. (Doc. No. 53 at 3; *see also* Doc. No. 50-2, Ex. 5.) Indeed, Wells Fargo notes that the footer indicates that the payoff demands were printed from the CDC Online website. (Doc. No. 53 at 3; *see also* Doc. No. 50-2, Ex. 5.)

As Wells Fargo puts it, "the agreement at issue is the SBA Deed of Trust between the borrower and the CDC, which was assigned to the SBA," and "[a] payoff letter is the method by which the borrower obtains the payoff amount, not its own separate contract." (Doc. No. 53 at 4.) The court finds this reasoning to be persuasive. First, the order of events accords with California statutory requirements for mortgages and liens. As the escrow holder, First American was statutorily authorized to send a written request for the payoff demand, and the SBA, as the beneficiary's assignee, was statutorily required to respond to First American within 21 days of receipt of a payoff demand request. (*See* SAC at ¶ 8; Doc. No. 49-1 at 5–15); Cal. Civ. Code §§ 2943(a)(4), (5), (b)(1). Second, Wells Fargo's actions are corroborated by the SBA's regulations and policies. *See* 13 C.F.R. § 120.800 *et seq.* The SBA's policies state that when a borrower provides notice that it wishes to prepay a 504 loan, the CDC obtains the Central Servicing Agent's ("CSA") estimate of a prepayment amount, and the borrower wires payment funds to the CSA. (Doc. No. 46 at 10–11.) Once the CDC receives payment verification from the CSA, the CDC releases the collateral securing the 504 loan in accordance with state law requirements. (*Id.*)

Thus, the SAC is "devoid of facts tending to show that these were actions taken in exchange for the alleged promises" set forth in First American's written request, as opposed to being actions taken within the scope of Wells Fargo's statutory role as the CSA. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 996 (E.D. Cal. 2012) ("The FAC, however, is devoid of facts tending to show that these were actions taken in exchange for the alleged promises in the [letter alleged to be a contract], as opposed to obligations under the [existing purchase agreement between the parties], or simply business decisions.").

As such, First American has failed to adequately allege that it had a contract with Wells Fargo and, by extension, the SBA. The court must therefore dismiss First American's implied contractual indemnity claim. The court previously granted leave to amend because it was clear at the hearing on the motions to dismiss the FAC that First American had failed to include allegations relating to the payoff demand, which counsel for First American represented would serve as the basis for its implied contractual indemnity claim. (Doc. No. 42 at 11–12.) The court

has already now granted First American three opportunities to allege a claim upon which relief could be granted in this regard, and First American has been unable to do so with respect to its implied contractual indemnity claim. The court therefore concludes that additional amendment would be futile and declines to grant further leave to amend as to this claim.

### 2. Equitable Indemnity Claim

First American also brings an equitable indemnity claim against Wells Fargo. (SAC at ¶¶ 16–20.) Wells Fargo contends that this claim must also be dismissed because Wells Fargo is not a joint tortfeasor with the party seeking indemnity and would not be liable directly to the underlying plaintiffs. (Doc. No. 45 at 3.)

"To state a claim for indemnity, a plaintiff must plead: (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Allied Prop. & Cas. Ins. Co. v. Dick Harris, Inc.*, No. 2:13-cv-00325-WBS, 2013 WL 2145961, at *5 (E.D. Cal. May 15, 2013) (internal quotation marks and citations omitted). "Under California law, indemnity may be either 'express indemnity,' which refers to an express contract term providing for indemnification, or 'equitable indemnity,' which embraces traditional equitable indemnity and implied contractual indemnity." *Starbucks Corp. v. Amcor Packaging Distribution*, No. 2:13-cv-1754-WBS, 2014 WL 5780951, at *3 (E.D. Cal. Nov. 5, 2014) (citing *Prince v. Pac. Gas & Elec. Co.*, 45 Cal.4th 1151, 1157–60 (2009)). Where, as here, a contract does not exist, "only the possibility of equitable indemnity" remains. *Id.*

Equitable indemnity allows one "to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be equitable sharing of loss between multiple tortfeasors." *Gem Developers v. Hallcraft Homes of San Diego, Inc.*, 213 Cal. App. 3d 419, 426 (1989) (internal quotation marks and citation omitted). "California law requires that, '[w]ith limited exception, there must be some basis for tort liability against the proposed indemnitor[,] . . . generally based on a duty owed to the underlying plaintiff.'" *Starbucks Corp.*, 2014 WL 5780951, at *4. "In the absence of any such duty owed by the third-party defendant to the underlying plaintiff, the claim of defendant and third-party plaintiff for equitable indemnity

1  fails as a matter of law." *Certain Underwriters at Lloyd's of London Subscribing to Policy No. E*
2  *& O 14 10873 A v. Gen. Star Indem. Co.*, 339 F. Supp. 3d 930, 932 (E.D. Cal. 2018).

3        Here, First American alleges that "if Plaintiffs suffered any damages, such damages were
4  caused entirely or partly by Third-Party Defendants' breach of contract, intentional, or negligent
5  conduct." (SAC at ¶ 17.) As concluded above, the SAC does not adequately allege that Wells
6  Fargo contractually agreed to do anything in its response to First American's written requests for
7  payoff demand. Thus, any duty that Wells Fargo owed plaintiffs must arise from some other
8  source.

9        Wells Fargo argues that it had neither a contractual duty to plaintiffs nor a duty to them
10 under the law. (Doc. No. 45 at 8–10.) Wells Fargo avers that California Civil Code § 2941
11 "places reconveyance obligations on the beneficiary/assignee of a deed of trust (the SBA) and a
12 title insurer (First American)." (*Id.*) In opposition, First American argues that under both § 2941
13 and the SBA's regulations, Wells Fargo, as the SBA's agent, had a duty to reconvey. (Doc. No.
14 49 at 8–9.)

15       As an initial matter, the court assumes that First American conflates the CSA role with the
16 role of an agent in a principal-agent relationship between the SBA and Wells Fargo. This
17 assumption is corroborated by both the allegations of the SAC and First American's opposition to
18 Wells Fargo's motion, wherein First American defines a principal-agent relationship. (*See* SAC
19 at ¶ 8 (stating that Wells Fargo, as the CSA, was "acting within the course and scope of its
20 authority for and on behalf of Third-Party Defendant SBA, which approved and ratified Third-
21 Party Defendant Wells Fargo's conduct"); Doc. No. 49 at 7–8 (citing Witkin, Summary of Cal.
22 Law (10th ed. 2005) Agency, §§196–98.)) But the course and scope of Wells Fargo's authority,
23 defined by the SBA's regulations, is solely to process funds. *See* 13 C.F.R. § 120.802 ("Central
24 Servicing Agent (CSA) is an entity that receives and disburses funds among the various parties
25 involved in 504 financing under a master servicing agent agreement with SBA."). Even if Wells
26 Fargo could be the SBA's agent, and Wells Fargo could have reconveyed on the SBA's behalf,
27 First American's SAC simply does not sufficiently allege the existence of such a principal-agent
28 relationship between the SBA and Wells Fargo. *See Darling v. Green*, No. 12-cv-362-PSG-

13

CWX, 2013 WL 12132058, at *3 (C.D. Cal. Apr. 18, 2013) ("A principal-agent relationship arises if the following elements are satisfied: (1) the principal manifests assent to the agent that the agent will act on the principal's behalf; (2) the agent manifests assent to so act; and (3) there is an understanding that the agent will act subject to the principal's control.") (citing *Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003)).

Moreover, the court is not persuaded that Wells Fargo had a duty to reconvey under either California Civil Code § 2941 or the SBA's regulations. The SBA Deed of Trust lists Alliance Title Company as the trustee, and SJCCDC as the beneficiary. (Doc. No. 50-4, Ex 1 at 5.) SJCCDC subsequently assigned the SBA Deed of Trust to the SBA. (Doc. No. 49-1, Ex. 2.) In relevant part, California Civil Code § 2941 requires the following:

> (1) Within 30 calendar days after the obligation secured by any deed of trust has been satisfied, the beneficiary **[here, SJCCDC]** or the assignee of the beneficiary **[here, SBA]** shall execute and deliver to the trustee **[here, Alliance Title Company]** the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.
>
> [. . .]
>
> (2) *If the trustee has failed to execute and record, or cause to be recorded*, the full reconveyance within 60 calendar days of satisfaction of the obligation, *the beneficiary*, upon receipt of a written request by the trustor or trustor's heirs, successor in interest, agent, or assignee, *shall* execute and acknowledge a document pursuant to Section 2934a substituting itself or another as trustee and issue a full reconveyance.
>
> (3) If a full reconveyance has not been executed and recorded pursuant to either paragraph (1) or paragraph (2) within 75 calendar days of satisfaction of the obligation, then a *title insurance company may* prepare and record a release of the obligation.

Cal. Civ. Code § 2941 (b)(2)–(3) (emphasis added).

Thus, § 2941 created a duty for Alliance Title Company—who is not a party to this action—to reconvey in the first instance, and the SBA in the second instance. That section is designed with "backup methods to assure the trustor can promptly clear title to the secured property" when the trustee fails to reconvey. *Markowitz v. Fid. Nat. Title Co.*, 142 Cal. App. 4th 508, 522 (2006). The first backup method *requires* the beneficiary to "substitute itself in as

trustee and execute a full reconveyance." *Id.* If the beneficiary also fails to act, then a title insurance company *may* reconvey. *Id.* at 523.[4] It is clear, however, that nothing in this statutory scheme implicates Wells Fargo as the CSA.

Nor does the SBA's regulatory scheme create a duty for Wells Fargo to reconvey. Indeed, First American concedes that the Standard Operating Procedure implicates the CDC as it relates to reconveyance. Specifically, First American notes in its opposition to Wells Fargo's motion to dismiss, the excerpt of the Standard Operating Procedure

> merely purports to establish that *the CDC is responsible to* process payments of loans (such as the SBA Loan), including *releasing the collateral (such as the SBA Deed of Trust) once the loan has been paid in full.* The excerpt does not concern or even rebut the responsibilities of the Central Servicing Agent (here, Wells), nor does it eliminate the fact that Wells, as the CSA, was obligated (and likely authorized) to cause the SBA Deed of Trust to be reconveyed. Contrary to Wells' protestation, the SBA's declaration in support of its motion for summary judgment places the burden on the CDC and Wells (the CSA).

(Doc. No. 49 at 9) (emphasis added). Additionally, in asserting that Wells Fargo bore a burden to reconvey, First American cites to the declaration of Laura Crombie, a loan specialist for the SBA, who declared that the CSA is tasked with processing prepayments. (Doc. No. 49 at 9; *see also* Doc. No. 44-2 at ¶¶ 1, 10, 12.) But that statement in no way provides support for First American's proposition that the CSA is responsible for executing a reconveyance.

In sum, First American has simply not alleged that Wells Fargo breached a duty that it owed to plaintiffs. First American's equitable indemnity claim against Wells Fargo therefore fails as a matter of law and must be dismissed. In its previous order, the court accepted First American's explanation that its FAC inadvertently omitted an additional cause of action against Wells Fargo for equitable indemnity. (Doc. No. 42 at 8.) The court has also previously dismissed this claim specifically as brought against the SBA (but not against Wells Fargo) after finding that

---

[4] First American also notes that § 2941 is permissive and "places no obligation whatsoever on a title insurer." (Doc. No. 49 at 9 n.2); *see also Markowitz*, 142 Cal. App. 4th 508, 523 ("The plain language of the statute imposes no obligations on an escrow holder whose role it is to facilitate the exchange of documents between the beneficiary and the trustee, or to record the reconveyance on behalf of the trustee. The statute speaks only to the duties and obligations of trustees and beneficiaries.").

it was barred as against the SBA by application of the doctrine of derivative jurisdiction. (Doc. No. 18 at 9–10.) First American has been given adequate opportunity to state a cognizable equitable indemnity claim and has been unable to do so. Under these circumstances granting further leave to amend would be futile.

That being said, the court notes that plaintiffs and First American may have claims against SBA and Alliance Title Company. But Alliance Title Company is not a party to this action, and any equitable indemnity claim against SBA would need to be brought in a new action in federal court because of the doctrine of derivative jurisdiction. Accordingly, the court will dismiss First American's equitable indemnity claim without further leave to amend.

C.     **Remand to Stanislaus County Superior Court**

Lastly, the court will remand this action to Stanislaus County Superior Court, where plaintiffs filed their original complaint in this case alleging claims solely against First American. (*See* Doc. No. 1, Ex. A.) First American filed a cross-complaint on May 23, 2018, in the same state court action, naming as cross-defendants Wells Fargo and the SBA. (Doc. No. 1, Ex. B.) On August 16, 2018, the SBA removed this action to this federal court pursuant to 28 U.S.C. § 1442(a)(1) (*See* Doc. No. 1); 28 U.S.C. § 1442(a)(1) (allowing a civil action directed against an agency of the United States to be removed to district court).

As stated above, First American's SAC is now being dismissed without further leave to amend. Thus, there are no longer any claims against the SBA remaining in this action. This court therefore lacks subject-matter jurisdiction, and this action must be remanded to Stanislaus County Superior Court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**CONCLUSION**

For the reasons explained above:

1. Wells Fargo's motion to dismiss (Doc. No. 45) is granted;

2. The SBA's motion to dismiss (Doc. No. 44) is granted;

3. The SBA's motion for summary judgment (Doc. No. 44) is denied;

/////

16

    4.      First American's second amended third-party complaint (Doc. No. 43) is dismissed without leave to amend;

    5.      This action as to the remaining claims is remanded to the Stanislaus County Superior Court; and

    6.      The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**December 16, 2020**__            _/s/ Dale A. Drozd_
                                                                              UNITED STATES DISTRICT JUDGE